UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RODNEY VAN DUNK,

           Plaintiff,

v

PETER BROWER, individually and as an officer of the Town of Ramapo; TOWN OF RAMAPO, a New York municipal corporation; JOHN DOE #1, individually and as an officer of the Town of Ramapo; JOHN DOE #2, individually and as an officer of the Town of Ramapo; JOHN DOE #3, individually and as an officer of the Town of Ramapo; EDWARD PASCOCELLO, individually and as an officer of the Town of Ramapo; ADVANCED FIGHTING SYSTEMS, a New Jersey Corporation; and PHIL DUNLAP,

           Defendants.

Case No.:7:07-civ-07087

---

# *PLAINTIFF'S BRIEF IN OPPOSITION TO*

# *MOTION TO DISMISS*

---

# POINT I

## THE FIRST COUNT ADEQUATELY PLEADS A CAUSE OF ACTION UNDER 42 USC 1985

Plaintiff has alleged that Phil Dunlap, the acknowledged principal in AFS, called him and told him that unidentified officers of the Town of Ramapo Police Department ("ToRPD") had advised him [Dunlap] that Plaintiff was a member of the ethnic group euphemistically labeled the "Hillburn community", i.,e., Ramapough-Lenape Nation; that his ethnic group had a number of bizarre characteristics; and that he– Plaintiff– was even more unsavory than his neighbors.  Plaintiff has also alleged, in his Second Amended Complaint, that Dunlap barred Plaintiff from his school on the basis of these calls. Although Dunlap joins in this motion, he has not denied the allegations about the substance of what he said to Plaintiff, nor has he stepped forward and offered any different or additional reasons for barring Plaintiff.

Plaintiff has not alleged, because he does not know it or have any reason to allege it, that the various unidentified officers had a concerted plan to do this.  However, it flies in the face of common sense to imagine that, by coincidence, several different officers made such calls randomly   Furthermore, it is clear that each caller was seeking to arrive at a meeting of the minds with Dunlap about putting Plaintiff out. Perhaps there were several parallel conspiracies, between Dunlap and John Doe #1, between Dunlap and

John Doe #2, etc., all directed at the same goal  At the very least, this motion should be regarded as premature until Plaintiff has an opportunity to find out from Dunlap who from the ToRPD called him; and to then depose those officers and find out if they acted independently or in concert.

In **Pro-Choice Network of Western New York v Project Rescue Western New York, 799 F. Supp. 1417, 1430 (WDNY, 1992) aff'd in part as Schenck v Pro-Choice Network of Western New York, 519 US 357 (1997)** the trial court found that the allegations about the activities of Defendants, in impeding women's rights to travel to obtain abortions, were sufficient to sustain a complaint under 42 USC 1985(3) from a motion to dismiss.   Here. Plaintiff should have an opportunity to develop evidence about these allegations before the Court rules on them.

### POINT II

### THE SECOND COUNT ADEQUATELY PLEADS A
### CAUSE OF ACTION UNDER 42 USC 1983

The Second Amended Complaint specifies that the calls from the ToRPD officers caused Dunlap to bar Plaintiff from his AFS.  No one has suggested any other or different or additional reasons.  It is true that Plaintiff does not allege that the officers coerced Dunlap to do so, as opposed to using their status and authority as police officers, but that

argument is specious.  There is no requirement under **42 USC 1983** .of coercion, only that action taken under color of state law resulted in a deprivation of a federally recognized right.  **Gibbs-Alfano v Ossining Boat & Canoe Club, Inc., 47 F. Supp. 2d 506 (SDNY, 1999)** held that an action under **42 USC 1983** was viable if action under color of state law lead to an abridgement "...of a right arising under the constitution or any other federal law".  Here, in addition to claims of First Amendment rights to travel and to associate, Plaintiff claims that his right to access places of public accommodation under **42 USC 2000a** was impeded.

Plaintiff also alleges that his Fourteenth Amendment rights to substantive due process were violated by the actions of the John Doe defendants.  Defendants correctly state that such actions must be "outrageously arbitrary", must "shock the conscience" and must violate "the decencies of civilized conduct".  Apparently, it is the viewpoint of the Town of Ramapo that *if it is true* that its police officers discouraged AFS from allowing members from a group [who has lived within the borders of the Town since its inception] it would not be shocking to the conscience or contrary to the values of civilized society as the Town of Ramapo views it; in short, "its OK'.  It is our contention that it is not only for the jury to decide if this happened, but whether it was such as to shock the conscience.

As to Dunlap, the Second amended Complaint clearly alleges that which was implicit before– that he acted in concert with the unidentified John Does to terminate Plaintiff's membership.

## POINT III

## THE THIRD COUNT ADEQUATELY PLEADS A CAUSE OF ACTION UNDER 42 USC 1981

The contention that the Amended Complaint didn't allege a contractual relationship between Plaintiff and Defendant AFS is frivolous, but any shortcomings are cured by the Second Amended Complaint. The only reason advanced by Dunlap for terminating Plaintiff was what he was told by the ToRPD whom he did not name. Whether his decision was swayed more or less by Plaintiff's ethnic heritage or his perceived shady past, we don't now know. Nonetheless, the Third Count of the Second Amended Complaint is more than an adequate basis to proceed upon.

Addressing the motion of the ToR Defendants, the Second Amended Complaint certainly sets forth a set of facts from which a finder of facts could conclude that the actions of the ToRPD officers, if true, were racially motivated. Their alleged report to Dunlap seemed to focus on the genetic oddities of his community, and perhaps only tangentially on his reputation.

Plaintiff acknowledges that under **Jett v Dallas Ind. School Dist., 491 US 701(1989),** the claims against the John Doe Defendants in their capacity as police officers may well be barred, but that decision does not foreclose individual and private liability on

them.

## POINT IV

### THE FOURTH COUNT ADEQUATELY PLEADS A CAUSE OF ACTION UNDER 42 USC 2000(a)

"Place of public accommodation" has been interpreted by the federal courts to include such places as women's health spas, **Receive v Shape Spa for Health & Beauty, Inc. 516 F. 2d 64 (5th CCA, 1975)**; poolroom, **US v Williams, 376 F. Supp. 750 (M.D., Fl, 1974)**, skating rinks, **Evans v Seaman, 452 F. 2d 749 (5th CCA, 1971)** and a swim club, **Olzman v Lake Hills Swim Club, Inc., 495 F. 2d 1333 (2d CCA, 1974).** The contention that this gym, which trains people for a role in a spectator sport is axiomatically not a place of public accommodation cannot be sustained.

## POINT V

### THE FOURTH COUNT ADEQUATELY PLEADS A CAUSE OF ACTION UNDER NJSA 10:5-1

NJSA 10:5-5 lists over 50 types of places that are public accommodations within

the meaning of the Law Against Discrimination ("LAD"), NJSA 10:5-1; and that list is not meant to be exhaustive but rather illustrative. The purposes of the act is " the eradication of the cancer of discrimination", **Zive v Stanley Roberts, Inc., 182 NJ 436 (2005).** In that light, this Court cannot say that as a matter of law Plaintiff's Second Amended Complaint is inadequate.

### POINT VI

### THE FOURTH COUNT ADEQUATELY PLEADS A CAUSE OF ACTION UNDER 42 USC 1983

The ToR Defendants do not argue that, even if true, Plaintiff has not pleaded a viable claim under 42 USC 1983 in the Sixth Count; rather, it seeks to produce evidence and obtain summary judgment on this Count. However, there is a question of fact as to the events of June 15, 2007 just on the face of Defendant Pascocello's own reports and affidavits which preclude summary judgment.

    a.    **The alleged missing license plate is a pretext.**

Plaintiff has produced, as Exhibit    To the Affidavit of Plaintiff opposing this motion, PO Pascocello's initial report of this incident, written before he thought that a federal judge would be reading it. Although detailed, and written while the events were

fresh in his mind, *it contains no reference whatsoever to a missing license plate*.

    **b.    How and why was Rodney Van Dunk "known", on sight, to a police officer whom he never met before?**

Pascocello wrote in his report, and again in his Affidavit, that he "knew" that the man sitting quietly in his truck was Rodney Van Dunk; but he doesn't say how he knew this. Van Dunk has sworn in his affidavit that another officer of the ToRPD with whom he had problems had told him that part of his orientation had been a discussion of Plaintiff; perhaps that is the source of what Pascocello "knew" .

    **c.    PO Pascocello ignored the criminal violation by a Caucasian man to focus on the lack of identity of someone he "knew"**

Pascocello arrived on the scene because of the illegal discharge of fireworks, which counsel points out can be dangerous; but when faced with a polite and submissive Caucasian, "Doug", he quickly shifted his attention to the un-cowed Plaintiff. Defendants' brief asserts that Pascocello "recovered" illegal fireworks but, in point of fact, his report makes no mention of such a confiscation, no charge was issued and, on information and belief, Pascocello entered nothing into the evidence locker that day.

It may well be that when a full record is developed, the facts may support a finding of qualified immunity; but with the "facts" yet to be determined, it is impossible for this Court at this stage to determine that Pascocello's acts were immune.

## POINT VII

**THE SEVENTH COUNT ADEQUATELY PLEADS A CAUSE OF ACTION UNDER 42 USC 1983**

The Second Amended Complaint very specifically alleges that Defendant Brower, now Chief of the ToRPD and for many years past a senior officer, himself established and/or tolerated and encouraged, a custom, pattern and practice of ignoring his own Department's General Order #    (Attached).  As the Court can see, it provides a very detailed procedure for documenting complaints by citizens, classifying same, setting up a protocol for investigating each one and documenting that investigation and the outcome. From at least 2000, if not before, until the beginning of 2007, this process was under Brower's direct control.   Plaintiff has alleged that Brower, as well as other senior officers, ignored these procedures and ignored citizen complaints, and especially his complaints, about mistreatment by ToRPD.

Plaintiff has also pleaded that at a public forum in or about April 2006, he so advised both Chief Brower and Town Supervisor St. Lawrence. Brower, and the Town of

Ramapo, did nothing about this; and by their deliberate indifference create an atmosphere within the ToRPD in which officers were not accountable, encouraging or at least tolerating misconduct This culture was the  by Defendant Brower, and he has a very personal involvement in the harassment of Plaintiff and violation of his rights.

As for the Town itself, it is well aware of the pattern and practice of the ToRPD disregarding its own internal rules about citizen complaints.  It has been aware of this problem for some years, at least, and the Town Supervisor was publically put on notice– if he was unaware before– that the members of the Ramapough Nation community, primarily living in Hillburn, felt targeted and harassed by the ToRPD.  Under the standards set out in **Batista v City of New York, 2007 WL 2822211 (SDNY, 2007)** this allegation is sufficient to survive a motion to dismiss.

### POINT VIII

### THE EIGHTTH COUNT ADEQUATELY PLEADS A CAUSE OF ACTION FOR CONSTITUTIONAL TORT

Plaintiff did not allege in the Eighth Count that his First Amendment rights were abridged after he spoke out to and about the ToRPD at the public forum at the Ramapough Nation Lodge; his allegation is that his treatment by PO Pascocello, and the subsequent disregard of his complaints by the ToRPD, were retaliation for his exercise of

First Amendment rights.  **Hartmann v Moore, 547 US 250, 251 (2006)** held that in a retaliation case, "the evidence of motive and injury are sufficient for a circumstantial demonstration that one caused the other,...".  As discussed in Point VI, infra, Pascocello's conduct on June 15th is highly questionable, but he admits that he "knew" Plaintiff even though he was only on the force for nine months and had no prior dealings with him. This admission could support an inference that Plaintiff had been targeted for his embarrasment of Chief Brower and Supervisor St. Lawrence, and this Count too should survive defendants' motion.

 

COTZ & COTZ

By_____

/s/ George J. Cotz 0463