UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
RODNEY VAN DUNK,

                Plaintiffs,

-against-

PETER BROWER, individually and as an
officer of the Town of Ramapo, TOWN OF
RAMAPO, a New York municipal corporation;
JOHN DOE #1, individually and as and officer of the
Town of Ramapo; JOHN DOE #2,
individually and as an officer of the Town of Ramapo;
JOHN DOE #3, individually and as an officer of the
Town of Ramapo; f/n/u PASCOCELLO, individually
and as an officer of the Town of Ramapo; ADVANCED
FIGHTING SYSTEMS, a New Jersey Corporation; and
PHIL DUNLAP,
                Defendants,
------------------------------------------------------------------X

**AFFIRMATION IN REPLY AND IN FURTHER SUPPORT OF MOTION TO DISMISS**

07 CIV. 07087 (CLB)

STATE OF NEW YORK    )
                                 )ss.:
COUNTY OF ROCKLAND  )

      JANICE GITTELMAN, ESQ., being duly sworn, deposes and says:

      1. I am an attorney duly admitted to practice law in the State of New York and before this Court, and am a Deputy Town Attorney in the office of Michael L. Klein, Town Attorney of the Town of Ramapo, counsel for the defendants, PETER BROWER, TOWN OF RAMAPO, JOHN DOE #1, JOHN DOE #2, JOHN DOE #3 and PASCOCELLO, in the above named action.

      2. The above named defendants filed a motion to dismiss the complaint. Thereafter, Plaintiff filed a motion to amend the complaint and also filed papers in opposition to the motion to dismiss. Those papers referenced materials contained in the proposed amended complaint. At a conference held on December 7, 2007, all parties agreed to the amendment

of the Second Amended Complaint and further agreed that the previously filed motion to dismiss and supporting papers would be considered as against the Second Amended complaint. The parties further agreed that any new material could be addressed in reply affirmations. Plaintiff subsequently filed the Second Amended Complaint, a copy of which is annexed hereto as Exhibit A.

3. Defendants assert that, for the reasons set forth in the underlying Memorandum of Law and the annexed Memorandum of Law in Reply, the motion to dismiss must be granted.

4. Attached hereto are the following exhibits which are referenced in the Memorandum of Law in Reply:

Exhibit B – Plaintiff's affidavit

Exhibit C – Police report

Exhibit D – Police report and Certificate of Conviction

**WHEREFORE**, for the reason set out in the Memoranda of Law and exhibits accompanying the motion, it is respectfully submitted that dismissal in favor of defendants Brower, Town of Ramapo, John Does 1 through 3 and Pascocello be granted, together with such other, further and different relief as to this Court seems just and proper.

Dated: Suffern, New York
December 20, 2007

JANICE GITTELMAN - #0029

Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RODNEY VAN DUNK,

        Plaintiff,

        Case No.: : 07-civ-07087

v

PETER BROWER, individually and as an officer of the Town of Ramapo; TOWN OF RAMAPO, a New York municipal corporation; JOHN DOE #1, individually and as an officer of the Town of Ramapo; JOHN DOE #2, individually and as an officer of the Town of Ramapo; JOHN DOE #3, individually and as an officer of the Town of Ramapo; *EDWARD PASCOCELLO*, individually and as an officer of the Town of Ramapo; ADVANCED FIGHTING SYSTEMS, a New Jersey Corporation; and PHIL DUNLAP,

        *SECOND AMENDED COMPLAINT*

        Defendants.

Plaintiff Rodney Van Dunk residing at 37 Sixth Street, Hillburn, New York, complaining of the Defendants says:

**Parties**

    1. Plaintiff is a resident of the Village of Hillburn, Town of Ramapo, County of Rockland, and he is a citizen of the State of New York. He is of Native American descent, a member of the Ramapough Lenape Nation, and as such is a member of a protected group.

    2. Defendant Town of Ramapo is a municipal corporation located in Rockland County, New York.

    3. Defendants Peter Brower, Edward Pascocello, John Doe #1, John Doe #2, and John Doe #3 are employees of the Police Department of the Town of Ramapo in Rockland County, and, on information and belief, all are residents of the State of New

York.

4. Advanced Fighting Systems is a New Jersey corporation located in the Township of Mahwah, County of Bergen, State of New Jersey, and is engaged in interstate commerce.

5. Phil Dunlap is a resident of the Township of Mahwah, County of Bergen, State of New Jersey.

**Jurisdiction and Venue**

6. Venue is properly placed in the White Plains vicinage, as all parties are located in Rockland County or Bergen County, New Jersey.

7. This Court has jurisdiction pursuant to **28 USC 1331** as the issues arise under Federal Statutes, to wit, **42 USC 1981, 42 USC 1983, 42 USC 1985, and 42 USC 2000(a)**; and it has concurrent jurisdiction over pendent state law claims under **28 USC 1367**.

**Factual Allegations**

8. Defendant Phil Dunlap is the principal in, and managing officer of, Advanced Fighting Systems ("AFS"), a New Jersey Corporation, with its principal place of business at 221 Franklin Turnpike, Mahwah, New Jersey. This business is located approximately one mile from the New York State line. AFS is engaged in the business of training individuals for fighting and for competition in such fighting and martial arts contests known as Ultimate Fighting Championships, etc., and is a place of public accommodation within the meaning of the Civil Rights Act of 1964.

9. AFS is engaged in interstate commerce. It advertises on the internet *inter alia*, **Exhibit A**, and draws its clientele from a market area that encompasses portions of both New York and New Jersey.

10. Plaintiff enrolled at AFS to undertake training in fighting and martial arts skills. In doing so, he entered into a contract, and a contractual relationship, with AFS that had explicit and implicit terms.

11. A number of police officers from the Defendant Town of Ramapo Police Department are enrolled at AFS.

12. On or about June 10, Defendant Phil Dunlap called Plaintiff, and advised him that he had been called by the [Town of] "Ramapo Police Department" who told him [Dunlap] many negative things about Plaintiff, and told him that Plaintiff was a member of the "Hillburn community", and that the "Hillburn community" was racially mixed and suspect, that the "Hillburn community had communication problems" with the Ramapo Police, that people from Hillburn and Stag Hill had curious, even bizarre racial characteristics such as light skin and blue eyes combined with Negroid features, etc. Dunlap told Plaintiff that because of all of these things, it would be best if he did not return to the school.

12A. The phrase "Hillburn Community", if used by the John Does, was a euphemism for the derogatory term "Jackson Whites" or Ramapough Lenape Nation.

13. Plaintiff had several further telephone conversations with Dunlap in the next week, in which Dunlap reiterated some or all of these comments, and remained

adamant that Plaintiff was excluded from his school. Dunlap told Plaintiff that two or three officers of the Town of Ramapo Police Department ("ToRPD") had spoken to him about Plaintiff, and those officers are identified herein as John Does 1, 2 and 3.

14. Hillburn is a village within the Town of Ramapo, Rockland County, New York, and abuts the Stag Hill community in Mahwah, New Jersey. These two communities are largely peopled by members of the Ramapough Nation, a Native American tribe, which has been recognized as such by the States of New York and New Jersey. Plaintiff is a member of the Ramapough Nation, and is active in the affairs of said Native American tribe.

15. On Friday, June 15, Plaintiff was present at an area adjacent to the Fourth Street Bridge in Hillburn, an area designated by the Hillburn mayor and trustees as an appropriate spot for residents of the Village, including, but not limited to people of the Ramapough Nation to congregate and socialize.

16. On that occasion Defendant Pascocello, an officer of the Town of Ramapo Police Department, appeared at the scene, apparently in response to a report of illegal fireworks activity.

17. Defendant Pascocello, questioned two young people who had fireworks in their possession, Doug LaForge and John Peterson. He demanded and received identification from Peterson who is a member of the Ramapough Nation, and demanded but did not receive identification from LaForge, who is white. Although he had initially taken their fireworks, he returned the fireworks to them.

18. Defendant Pascocello then approached Plaintiff, who was sitting in his truck, and demanded that Plaintiff get out of the truck and assume a spread eagle position against the truck for a pat down. Defendant Pascocello aggressively frisked Plaintiff. Defendant Pascocello told Plaintiff "I know who you are and I'm not afraid of you", used profanity at him throughout the entire process, and then walked away from Plaintiff calling him a "fucking nigger".

19. Plaintiff attempted to make a verbal complaint by telephone about Defendant Pascocello's behavior, but Sergeant DeMaio of the Town of Ramapo Police refused to take the verbal complaint, contrary to Town of Ramapo Police Department General Order 202.4(1)(A).

20. The next day, on Saturday, June 16, Plaintiff went to the Town of Ramapo Police headquarters and was allowed to fill out a written complaint about Defendant Pascocello, but was refused a copy of same.

21. Plaintiff has subsequently returned and attempted to get a copy of this complaint, but has consistently been refused same.

22. In speaking of Plaintiff to Dunlap, Defendants John Doe 1, John Doe 2, and John Doe 3 were using their authority as police officers of the Town of Ramapo Police Department, and acted under color of the state law, to persuade him to bar Plaintiff.

23. At a public meeting held at the Ramapough Nation Lodge to address issues surrounding the alleged murder of a member of the community by New Jersey park Police in the spring of 2006, Defendant Brower and ToR Supervisor St. Lawrence were present on the dias. On that occasion, Plaintiff rose and addressed them, complaining and

informing them of the pattern and practice of racial harassment and profiling against the men of the Ramapough community by the ToRPD.

24. Prior to mid 2006, Defendant Brower was for many years a captain in the ToRPD, with responsibility for civilian complaints against and about police officers. His duties in that regard were set forth in ToRPD General Order # attached. In 2006, Brower was promoted to Chief of the ToRPD.

25. On many occasions, Plaintiff has made verbal complaints to Defendant Brower about racial harassment by ToRPD officers against himself and against other men in the Ramapough community.

26. On information and belief, Defendant Brower never pursued these complaints, contrary to GO #202.

## FIRST COUNT
## (42 USC 1985)

27. Plaintiff had a constitutional right to travel from his home in New York to AFS in New Jersey to engage in interstate commerce, and to associate with other people who shared his interest in pursuing a career in professional fighting, a recognized spectator sport which is also a part of interstate commerce.

28. In making these telephone calls to Dunlap and/or speaking to him personally, the John Doe Defendants were using their positions as police officers, which were known to him, to impart information not commonly known to the general public, such as Plaintiff's unsavory history and the fact that the "Hillburn Community" had "communica- tion problems " with the Ramapo Police. Their statements were in the nature of an official warning, notwithstanding that they were communicated to someone outside their actual jurisdiction, and were cloaked with an appearance of official police action.

29. Because of the communications from the John Doe Defendants, and for no other reason that was ever expressed to Plaintiff, Dunlap barred him from AFS.

30. By barring Plaintiff from AFS, defendants Dunlap and John Does impeded his right to travel and associate.

31. Defendant John Does 1, 2, and 3 conspired, contrary to **42 USC 1985**, to deprive Plaintiff of his constitutional rights, including but not limited to First Amendment rights of travel and association, on the basis of his race, by encouraging Dunlap to bar him from AFS, and Dunlap conspired by agreeeing to bar him. But for the communications from the John Doe defendants, Dunlap would not have acted against Plaintiff.

WHEREFORE, Plaintiff demands Judgment on this Count against Defendants Dunlap, John Doe #1, John Doe #2, and John Doe #3, jointly and severally, for damages, costs of suit and reasonable attorney fees.

## SECOND COUNT
## (42 USC 1983)

32. Defendants John Doe #1, John Doe #2 and John Doe #3 acted under color of state law and in their capacity as police officers of the ToRPD in advising Dunlap that Plaintiff was unsavory and disreputable, and a part of a racially mixed and undesirable community. Their actions were cloaked with an official character by virtue of their well known position as police officers, communicating confidential information.

33. Defendants John Doe #1, John Doe #2, and John Doe #3 knew that in so doing they were abridging and impeding Plaintiff's enjoyment of his constitutional rights, including but not limited to his First Amendment rights of travel and association, and his Fourteenth Amendment right to substantive due process contrary to **42 USC 1983**.

WHEREFORE, Plaintiff demands Judgment on this Count against Defendants Dunlap, John Doe #1, John Doe #2, and John Doe #3, jointly and severally, for damages and costs of suit.

### THIRD COUNT
### (42 USC 1981)

34. Defendants Dunlap, John Doe #1, John Doe #2, and John Doe #3 interfered with and impeded Plaintiff's ability to form and perform a contract to receive services from AFS, for reasons that were racially based.

35. Such conduct was contrary to **42 USC 1981**.

WHEREFORE, Plaintiff demands Judgment on this Count against Defendants Dunlap, John Doe #1, John Doe #2, and John Doe #3, jointly and severally, for damages, costs of suit and reasonable counsel fees.

### FOURTH COUNT
### (42 USC 2000)

36. AFS is a place of public accommodation.
37. AFS barred Plaintiff on the basis of his race, contrary to **42 USC 2000(a)**.

WHEREFORE, Plaintiff demands Judgment on this Count against Defendants AFS, injoining it from barring him, and for costs of suit and reasonable attorney fees.

### FIFTH COUNT
### (NJSA 10:5-1, *et seq.*)

38. AFS is a place of public accommodation.
39. AFS barred Plaintiff on the basis of his race, contrary to **NJSA 10:5-5**, *et seq.*

WHEREFORE, Plaintiff demands Judgment on this Count against Defendants AFS for damages, reasonable attorney fees and costs of suit.

### SIXTH COUNT
### (42 USC 1983)

40. Defendant Pascocello is an officer and employee of the ToRPD.
41. On June 15, 2007 Defendant Pascocello was without due or probable cause

to detain or search Plaintiff, and his actions were undertaken in bad faith..

42. On June 15, 2007 Defendant Pascocallo was acting under color of state law as an officer of ToRPD in detaining and searching Plaintiff.

43. On June 15, 2007 Defendant Pascocello violated Plaintiff's constitutional rights, including but not limited to his Fourth Amendment right to be free of unreasonable search and seizure, and his Fourteenth Amendment right to substantive due process.

WHEREFORE, Plaintiff demands Judgment pursuant to **42 USC 1983** on this Count against Defendant Pascocello for damages, costs of suit, and reasonable attorney fees.

### SEVENTH COUNT

44. The actions of Defendant Pascocello and John Does 31, #2 and #3 were the result of inadequate training and or supervision by the Defendant Town of Ramapo.

45. The actions of Defendant Pascocello were the result of a pattern and practice by the Defendant ToRPD harassing Plaintiff and other members of the Ramapough nation due to racial bias.

46. Defendant Brower is the Chief of the ToRPD and, as such, he is the responsible party for supervising the training, instruction, discipline, control and conduct of the Defendant police officers. He is Also charged with promulgating all orders, rules, instructions and regulations of the ToRPD, including but not limited to those orders, rules, regulations and instructions concerning conduct of investigations and participation in such activities as ultimate fighting.

47. Defendant Town of Ramapo is a municipal corporation charged with and responsible for appointing and promoting, through the Town supervisor and Town Council, the members of the ToRPD, and for the supervision, training, instruction, discipline, control and conduct of the ToRPD and its personnel.

48. At all relevant times, Defendant ToR had the power, right and duty to control the manner in which the individual Defendants carried out the objectives of their employment and to see that all rules, orders, instructions and regulations promulgated for and by the ToRPD were consistent with the Constitutions of the United States and the State of New York, and with the laws of the State of New York and the ToR.

49. Defendant ToR, through the Town Supervisor and members of the Town Council, had actual and/or constructive notice through the Town Attorneys' office, that the ToRPD and specifically Defendant Brower were not complying with GO #   in the investigation of civilian complaints.

50. Defendants Brower and ToR consciously and intentionally failed to exercise supervision and control over the officers of the ToRPD, including but not limited to the individual defendants named herein, thereby tolerating, acquiescing in, condoning and encouraging conduct of the sort engaged in here, including but not limited to the racial profiling and harassment of male members of the Ramapough community.

51. Defendant Brower created a pattern and practice of not documenting citizen complaints, not investigating citizen complaints, not documenting the results of citizen complaints when they were investigated, not disciplining officers for harassment

of Plaintiff and other members of the Ramapough Nation. He did this deliberate indifference to the rights of citizens and members of the Ramapough Nation. He also acted with gross negligence, knowing that the officers of the ToRPD would feel empowered to ignore the rights of citizens.

52. Defendant ToR created a pattern and practice of allowing the senior officers in the ToRPD to not document citizen complaints, to not investigate citizen complaints, to not document the results of citizen complaints when they were investigated, to not discipline officers for harassment of Plaintiff and other members of the Ramapough Nation. It did this knowledge that it was occurring, and with deliberate indifference to the rights of citizens and members of the Ramapough Nation.

53. Defendants Brower and ToR knew that there was a history of antagonism between the "Hillburn Community" in general, and Rodney Van Dunk in particular; that not dealing with Plaintiff in a lawful and constitutional way would, or could, impede his Constitutional rights; and they failed to act in a corrective way.

WHEREFORE, Plaintiff demands Judgment pursuant to **42 USC 1983** on this Count against Defendants Brower and Town of Ramapo for damages, costs of suit, and reasonable attorney fees.

### EIGHTH COUNT

47. The actions of the Town of Ramapo Defendants were retaliation for Plaintiff's public complaints at the public forum at the Ramapo Nation Lodge.

48. In so retaliating, Defendants were not only discriminatory against Plaintiff due to race, but were attempting to chill his exercise of his First Amendment rights.

WHEREFORE, Plaintiff demands Judgment on this Count against Town of Ramapo Defendants for damages, costs of suit, and reasonable attorney fees.

Dated: December 11, 2007

COTZ & COTZ
/S/ George J. Cotz  0463
George J. Cotz
180 Franklin Turnpike
Mahwah, New Jersey 07430
Phone 201-512-9961
Fax    201-512-9963

### JURY DEMAND

Plaintiff demands trial by jury on all issues.

B/S/ George J. Cotz  0463

**Exhibit B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RODNEY VAN DUNK,

        Plaintiff,

v

PETER BROWER, individually and as an officer of the Town of Ramapo; TOWN OF RAMAPO, a New York municipal corporation; JOHN DOE #1, individually and as an officer of the Town of Ramapo; JOHN DOE #2, individually and as an officer of the Town of Ramapo; JOHN DOE #3, individually and as an officer of the Town of Ramapo; f/n/u PASCO CELLO, individually and as an officer of the Town of Ramapo; ADVANCED FIGHTING SYSTEMS, a New Jersey Corporation; and PHIL DUNLOP,

        Defendants.

Case No.: 07-civ-07087

*AFFIDAVIT IN OPPOSITION TO MOTION TO DISMISS*

STATE OF NEW JERSEY }
                        } S.S.:
COUNTY OF BERGEN   }

Rodney Van Dunk being duly sworn on his oath, deposes and says:

1.    I am the Plaintiff in this action. I make this Affidavit to oppose the Defendant's pending motion to dismiss my lawsuit.

Page 1 of 7

2. I have read the Affidavit of P.O. PASCO CELLO and I dispute his version of what happened on June 15, 2007 in many details.

3. First of all, in the very same paragraph (Paragraph 2) he says that he asked me for identification and that he knew me. If he knew me, why did he ask for identification other than to harass me?

4. It's true that my truck does not have a front license plate. But, I attach herewith the report Officer PASCO CELLO filed on the day of this incident, June 15, 2007, **Exhibit A**, which makes no mention at all of my alleged missing license plate, or for that being the reason why he approached me. The missing plate was reported by its owner, who is my father, some time ago, and the D.V. has never replaced the missing plate, see **Exhibit B** hereto. Moreover, if it is an offense, why didn't I get a ticket?

5. I also direct the Court to the second page of his June 15th report, **Exhibit A**, where a white male who was at the same location as me, "Doug", is noteworthy for his politeness to the officer. I also point out that the officer makes no mention of confiscating the illegal fireworks, which he did not do.

6. Lastly, there is the mystery of how this officer knew me, or knew of Rodney Van Dunk. The officer states in Paragraph 1 of his Affidavit that he has been employed by the Town of Ramapo Police Department for approximately 9 months, i.e. since January of this year, and I have never before encountered him. This is reminiscent

Page 2 of 7

of an event that happened to me about 5 years ago when a new patrol officer was assigned to the sector that includes Hillburn. In or about 2001 or 2002, while I was in my yard, a Ramapo patrol car stopped and the officer got out and spoke to me. He was an African American male, who I later learned was P.O. Mitchell, and he told me that he was new to the force, but that he knew who I was. He told me that his orientation as a new officer included efforts by the Ramapo Police Department to acquaint him with me and other members of my family!

7.  P.O. PASCO CELLO attaches to his moving papers an incident that happened more than three years ago, in September 2004, as to which he suggests he has some sort of personal knowledge (2½ years before he joined the force). The conviction which P.O. PASCO CELLO has referenced in his Affidavit was an outgrowth of a police riot, instigated and provoked by the Ramapo Police Department on September 13, 2004.

8.  According to a report by PO Mitchell, **Exhibit C**, on September 13, 2004, my ex-wife Diedre Van Dunk called the Ramapo Police to report two "trespassers" on the house next door to mine at 39 6th Street. She is not the owner of the property, but took it upon herself to report to P.O. Mitchell that two young men, Patton Oliver and Brad Powell had been on the 39 6th Street property and "did not belong there". He did not report that she did had reported a crime, and it is clear from his report that he knew that she certainly did not have standing to accuse these two young men of trespassing. In any

event, P.O. Mitchell reports that following my ex-wife's directions, he went around the corner and found three young men at the home of one of their grandmothers. One of the three eventually identified himself as Brad Powell; apparently Patton Oliver was not there and the other two young men there were Peter Bowels and my nephew Craig Van Dunk. Patrolman Mitchell further reports that my brother, Craig Van Dunk arrived on the scene. As one reads P.O. Mitchell's report, the younger Craig Van Dunk suddenly becomes a "suspect"(for which crime it is not clear), who his father could not remove from the scene. I advise the Court that Craig Van Dunk was at the time a minor, approximately 14 years of age. I also point out to the Court that at the time these events began to unfold no crime had been reported, and therefore, Craig Van Dunk as well as Brad Powell, Peter Bowels and Patton Oliver, if he had been there, would not have been "suspects" in anything, simply minors and citizens who may or may not have been on somebody's property, perhaps with and perhaps without express permission, which, as I understand it, is not a crime in the State of New York.

9. My brother called me and told me that the police were harassing his son and his friends so I came over to see what was going on. When I arrived there I had my 6 year-old daughter with me in the car and certainly had no intention of becoming involved in any fight. When I got there, there were only 2 police officers on the scene; but more arrived every minute, and before it was over I saw officers from the Town of Tuxedo, the Town of Clarkson, Township of Mahwah in New Jersey, and the Village of Suffern

there.

10. I categorically deny assaulting P.O. Mitchell or anybody else. I did strike P.O. Mitchell but only after he had struck me first. I was between him and my brother Craig, urging both of them to calm down, while he hit me. Attached hereto is a video tape obtained from the Suffern Police made on that day, and it clearly shows P.O. Mitchell laying hands on me first, without provocation.

11. The events of September 30, 2004, have to be viewed in the context of sustained harassment by the Ramapo Police against the members of the Ramapough Lenape Nation, Native Americans, many of whom–including me-- live in Hillburn. Almost every one of my nine brothers had been arrested at one time or another, before this, over one trivial incident or another. This is something that they even told the other Defendant, DUNLOP, about us. This was just one in a long line of acts of harassment against me by the Ramapo Police, and particularly Patrolman Mitchell, all of which had been the subject of prior complaints by me to then Capt. Brower (now Chief Brower, a Defendant herein), former Chief Dolan, and other officers.

12. The first incident I had with P.O. Mitchell, which I related above (¶ 6) occurred in or about 2001 or 2002, and I did make a complaint of it, verbally, to Capt. Brower. Not many months thereafter, on Easter Sunday 2002, I had my whole family at my house for a party and picnic. It was a beautiful day and we were all outside. We were all enjoying music being played on the stereo system in my brother Morgan's truck. It

was about 1:00 in the afternoon and P.O. Mitchell, without having received any noise complaints, took it upon himself to enter onto my property, tell us to hold the noise down and to enter my brother's truck and turn down his radio. This evolved into an altercation, and I was arrested that day for a disorderly persons offense.

13. Thereafter, P.O. Mitchell would cruise through the Village of Hillburn blowing kisses at me and my brothers. At or about this time P.O. Mitchell also came to my door to advise me that my wife, Diedre, did not wear adequate clothing when she was meeting our children at the bus stop!

14. I complained about this to Captain Brower. On another occasion, in or about 2005, P.O. Budnik, who was recently promoted to a Detective, forced me to the side of the road while I had my children in the car, and accused me of having his missing cell phone which he had dropped while chasing somebody through the woods in Hillburn. He cursed at me in the presence of my children, frightened my children, and half-an-hour later he found his cell phone – I don't know where or how – and called and apologized to me.

15. I have made complaints about all of these incidents and there has never been any reaction from the Town of Ramapo Police Department to any of them, except with regards to the incident with P.O. Budnik. I was told by Brower that he would be reprimanded, and a report added to his personnel file, but that never happened.

_____
RODNEY VAN DUNK

Sworn to before me this
16 day of November, 2007

_____
George J. Cotz, Esq.
an attorney at law of New Jersey

Exhibit C

# New York State Incident Report

| 1. Agency | 2. Division/Precinct | 3. ORI | 4. ☒ Orig ☐ Supp | 5. Case No | 6. Incident No |
|---|---|---|---|---|---|
| TORPD | HB/07 | NY 04353 | | 02-13957 | |

| 7. Report Day | 8. Date | 9. Report Time | Occurred On/From | 10. Day | 11. Date | 12. Time | Occurred To | 13. Day | 14. Date | 15. Time |
|---|---|---|---|---|---|---|---|---|---|---|
| TUE | 04/10/02 | 1501 | | TUE | 04/10/02 | 0845 | | | | |

| 16. Incident Type | 17. Business Name | 18. Weapon(s) |
|---|---|---|
| SUSPICIOUS | | |

| 19. Incident Address | 20. City, State, Zip | 21. Location Code |
|---|---|---|
| MOUNTAIN AVE AND SIXTH ST | HILLBURN, NY | 4429 |

22. Offense info — (blank)
23. No. of Victims: 0
24. No. of Suspects: 0/7

## Associated Persons

| Type/No | Name | DOB/Age | Address | Phone |
|---|---|---|---|---|
| CO | FRANK, LEANNE | 40 | 401 RT 17 Hillburn, NY | 357-0904 |
| OT | VANDUNK, RODNEY | 12/12/68 | 37 SIXTH ST Hillburn NY | |
| NI | VANDUNK, DEIDRE | 28 | " " " | |

**Victim:** Age 40, Sex F, Race Unk, Non-Hispanic, Handicap No

## Narrative (73)

RESPONDED TO CHESTNUT RIDGE BUS GARAGE 401 RT 17 FOR REPORTED PARTY PARTY WHO DRESSES INAPPROPRIATELY AT THE BUS STOP. WRITER RECIVED A NOTE WRITTEN BY BUS DRIVER LEANNE FRANK. THE NOTE STATED THAT DEIDRE VANDUNK PHYSICALLY PICKS UP HER CHILD SYDNEY AT THE BUS STOP AND IN DOING SO EXPOSES HER (DEIDRE) BREASTS WHICH IS EMBARRASSING TO THE BUS DRIVER AND THE OTHER CHILDREN ON THE BUS. SPOKE WITH RODNEY VANDUNK (DEIDRE'S HUSBAND) WHO STATED HE WOULD DISCUSS THE MATTER WITH HIS WIFE.

78. ID No: 240
80. ID No: 321
82. Status Date: 04/17/02

**Status:** ☒ Closed — Vict. Refused to Coop